Good morning, Your Honors, and may it please the Court. My name is James Young and I represent Ken Hamidi and more than a dozen other named plaintiffs in a class of thousands, in fact tens of thousands, of non-union State of California employees, plaintiffs below in appellants in this appeal. Mr. Hamidi and Ms. McElroy, two of our plaintiffs, are with us today to witness this argument. With the Court's permission, I'd like to reserve three minutes for rebuttal. Sure. Thank you. The posture of this case, as the Court is well aware, has changed considerably since the initial briefing was completed last November. In June, the Supreme Court issued its decision in Janus v. AFSCME and declared unequivocally that all exactions of union dues or agency fees from non-union public sector employees are unconstitutional as a violation of their First Amendment rights. Specifically, and in addition to its main holding, Janus made two subsidiary holdings that are relevant to the outcome of this case. It didn't address this particular issue directly, though? No, Your Honor, in the sense that the specific is not governed by the general. They didn't specifically address this issue. But they generally said, and I quote, Since there are no exceptions, it does apply to this case, so it governs this case. Further, it went on to note that by agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Moreover, the Court noted that to be effective, the waiver must be freely given and shown by clear and compelling evidence. It is for this reason that many of the lower court decisions that were cited by SCIA Local 1000 in its supplemental briefing simply aren't applicable. Those cases addressed union members who, subsequent to Janus, attempted to resign from union membership or attempted to resign in some cases and to revoke their dues to check off authorizations. Those aren't applicable to this case. In this case, fees from nonmembers are seized without any form of consent. It's a special exception written by the California legislature to normal wage withholding laws. So let me ask you, what's the relief that you're seeking? And how far along did the case get in district court? In district court, it was decided on cross motions for summary judgment, Judge Paez. And had the district court entered a class certification order? Yes, class was certified in this case. Yes, sir. Okay. And the relief that you're still seeking is? Is a refund of all fees that were illegally seized from the nonmembers' wages. Going back through the statute of limitations. That's correct, Your Honor. I believe we, actually it may have been less than the statute of limitations because we specified, I believe, that it went back to June of 2000. It may have only gone back to the issuance of the decision in Knox. But that was certainly as far as it goes. Let me ask, why don't we just vacate the judgment below and send this thing back to the district court to proceed according to Janus? Because, Your Honor, the district court may later. Why is there anything that we need to say? This Court needs to say that Mitchell is no longer good law. And that's why a reversal is necessary with a declaration that Mitchell is overruled. I realize that in the ordinary course of things, three judge panels in this circuit do not overrule prior decision making. But one of the exceptions to that, Judge Paez, as I'm sure you're aware, is when there is intervening and controlling Supreme Court authority. Janus is that intervening and controlling Supreme Court authority on the issue of what may be seized from non-members' wages without their consent and affirmative consent. So the, yes, I understand that. So the supplemental brief that we received from SEIU says that they directed the state to stop taking out deductions, all deductions. Because I understand it. And you can correct me if I'm wrong because I'm just reading what they presented to us. I believe that is true, Your Honor. But that's really not relevant to this appeal because this appeal deals with both retrospective relief. It may affect the prospective relief. But that's a matter for the district court. Right. I mean, isn't that something the district court would have to actually determine? Yes, Your Honor. That that moots prospective relief? That would certainly be something for the district court to determine in the first instance. It doesn't need to be addressed by this court. While we, I view the union's brief on those issues, and I say it in my brief, mere surplusage, more like a shot across the bow than anything. Their burden is to demonstrate mootness. It's a heavy burden. There are different standards that apply for mootness as applied to a state actor as opposed to a private actor in these types of claims, as I believe this court has held. But the bottom line is that those are matters for the district court to determine in the first instance, not this court. The union concedes that this appeal is not moot. That's the bottom line in all of its discussions on mootness. Well, not all. It's a rather brief discussion. Well, I think they agree that certain issues in the case are not moot. That's correct. Because you can have mootness as to various issues. Sure. I agree. I agree, Judge Paius. But the point is that that should be determined by the district court in the first instance. This court is merely called upon in this appeal to reverse the judgment of dismissal of plaintiff's claim. It's a very, very simple issue. The briefing made simpler by Janus. And a lot of it, in retrospect, a lot of work for Nott. But it preserved the case, obviously. So your position is that we still need to address the merits in light of Janus. Yes, Your Honor. Okay. The merits in light of Janus. This must be overruled. And you can explain it now if you want. Yes, Your Honor. Well, Mitchell determined that it was acceptable for a union to extract from non-consenting members who failed to respond to a union notice fees exceeding the maximum that could be constitutionally required. In essence, it was opt-in versus opt-out in the vernaculars developed. This was opt-out. We're dealing with opt-out. Yes, yes. Our position was that for anything exceeding the maximum amount that could be required, they had to opt-in. Rather than dissent is not to be presumed, consent should not be presumed. And following Mitchell, applying Mitchell, the district court held that Knox had not overruled Mitchell, saying that Knox was narrowly drawn, applying only to temporary special assessments, and therefore the street admonition, and the district court to its credit was very specific in saying, yes, it was an admonition, was still good law, or it hadn't overruled that admonition, and therefore Mitchell decided in 1992 by this court, remained good law, and that unions could extract from non-members more than could constitutionally be required as long as they hadn't responded to the union's notice. In Janus, the court specifically overruled that, saying that affirmative consent is required for all exactions from public sector employees, and therefore Mitchell sub salientio is overruled by the Supreme Court and should be specifically so stated by this court so that on remand, in its reversal, the district court can apply the concern that this court may say, well, actually, we didn't overrule Mitchell. I believe, not to write your decision for you, Your Honors, but Mitchell must be overruled because of Janus. Of that, we believe there can be no real question. Do you want to comment on the authority that the other side provided? They provided a case. This was provided, I assume, to you. It was Riffey versus Rauner. As it was a GVR, I'm not sure there's much comment to be made. I'm assuming they're going to say, well, since the Supreme Court GVR'd that case, why don't we just effectively do the same in this case? My guess is why. You have the opportunity to rebuttal to respond to it, but they did bring this to our attention, so I wanted to get it out. I'm happy to do it. I do know that the Seventh Circuit, and perhaps my colleague didn't have that at hand, the Seventh Circuit has since ruled and rejected some of the relief sought. My flippant comment is, I guess that means my younger colleague is going to be going back to the Supreme Court. But more accurately, Riffey versus Rauner, I believe, may have addressed people who at some point had signed union dues checkoff cards. So its application to the facts of this case are not relevant. This case is very specifically limited to people who are non-members. And under California statutory provisions, under the DILS Act, non-members aren't required to sign anything. If they sign nothing, the money comes out of their I believe that the privilege for Federal taxation only happens for Medicare and Social Security taxes. Otherwise, we all have to sign W-2s. But the State of California accepts from that, and perhaps I guess child support. Well, they can opt out. I'm sorry? They can opt out. No, Judge Paz, I think you misunderstand. Oh. They cannot opt out of paying, of having agency fees seized from their wages under California State law. The DILS Act provides that members have to sign dues checkoff authorizations. Non-members do not. State controller takes that money automatically. So there is no issue of consent here at all with regard to the plaintiffs and the class plaintiffs represent. They're all non-members. Union fees were taken from their wages involuntarily and without any form of consent whatsoever. So cases where you're dealing with Medicare, Medicaid providers, personal care assistance, such as in the Harris case, and Riffey v. Rauner is actually a subset of that case on remand from the Supreme Court, are dealing with people who at one point, I believe, and I wasn't intimately involved in the case, but I believe had at some point signed some form of consent to have the fees deducted from their wages or perhaps may have even been joined the union voluntarily. I'm not quite sure. I'm not as certain of that as I am of the other. I see that my time is over. Do you want to save some time for questions?  Okay. Thank you. Good morning. May it please the Court. Jeffrey DeMaine for the union, representing the union. I'm going to speak for up to 13 minutes. I may run out of things to say before that. And then Mr. Chang, who's representing the State Comptroller, is going to take the last two minutes, Your Honor. Thank you. Your Honor, I think as it's been discussed with Mr. Young, this case doesn't raise the same question as Janus. The district court determined that under existing law, the union had a right to use the opt-out system. It didn't violate anyone's constitutional rights. In Janus, the Supreme Court held that you can't collect any agency fees at all. Which is both the nonchargeable and the chargeable part. Although Janus didn't address the question of whether you can constitutionally use an opt-out system to collect the nonchargeable portion of the fees, it's essentially mooted, that question, because if you can't collect any fees, you can't collect the non you can't use an opt-out system to collect the nonchargeable portion of the fees because you just can't collect any fees at all. So there is no nonchargeable portion to be opted out of at this point. And although the union, although I think it's clear that the district court's decision was correct at the time it was issued, it can no longer stand after Janus. So we're asking this Court to merely vacate the decision below and to remand the case for further proceedings in light of Janus. Now, the plaintiffs have said in their supplemental brief that the Court can't just reverse, can't just vacate the decision below, it has to reverse it. They say that vacating and remanding for further proceedings in light of an intervening case is illogical and makes no sense, is what they said. The only reason I cited Riffey v. Rauner as additional authority this morning is because it shows that, in fact, the Supreme Court does that all the time. There's even an acronym for it, a GVR. It's grant the petition for cert, vacate the decision below, and remand. The R stands for remand, not reverse. So there's certainly nothing stopping this Court from doing that. We don't think this Court, we meaning the union, we don't think this Court needs to address any issues at this time. The only reason that I briefed in my supplemental brief the mootness issue slightly and the good faith issue and the class issue is to show the Court that there are issues  Mr. Young, in his brief, seems to suggest that this Court should reverse and remand for entry of appropriate judgment and remedial order. That seems completely wrong to me because, in fact, the judgment for the union that was previously issued could be issued again on remand, although for different reasons. As I think I laid out in my brief, the claims for injunctive and declaratory relief are moot because, as Your Honor mentioned, there's no dispute but that the fair share fee collection has ceased as of the date of Janus, June 27th of this year. Also, the remaining claim for damages, we believe the union, there are a number of issues to determine, for the district court to determine that. The most significant being the good faith defense. It's very possible that the, and we hope, that the district court will enter a judgment in favor of the union on remand. So we think that any direction from this Court as to how the remand should come out would be premature, Your Honor. And I think I really only have one more thing to say. I'm happy to try and answer questions if the Court has any questions. Mr. Young seemed to think that the Court needed to say something about Mitchell. I don't believe the Court needs to. We're not going to rely on Mitchell. I think I would agree with Mr. Young that Mitchell has just been pretermitted, essentially, by Janus.  I mean, Mitchell, we'll rely on Mitchell to the extent that Mitchell was good law at the time that the district court issued its decision, but that's, you know, that In other words, Mitchell supports the good faith defense, that at the time the union collected the fees, it was constitutional for it to do so and it relied in good faith on existing California statutes that had been, the constitutionality of which had been approved by this Court. But as of June 27, 2018, we understand that Mitchell can't survive Janus. That's not an issue, Your Honor. So I'm happy to try and answer any questions if the Court has any questions. Otherwise, I'll cede to Mr. Chang. I'm just curious, one question. Does Hudson still survive? Sorry, Your Honor. Has that procedure still, or has that gone away with Janus, too? I believe that's gone away with Janus, too. I think Janus rewrote the entire 50-some year history or 46-year history of fair share fee law in the public sector, Your Honor. If there's nothing else, I'll sit down and Mr. Chang. Good morning, Your Honors. Peter Chang on behalf of the State Comptroller. There are no contested issues concerning the State Comptroller, Your Honors. Appellants agree that sovereign immunity applies to preclude the award of past damages against the Comptroller. So whether Your Honors decide to vacate or reverse, we ask you to affirm that specific aspect of the judgment below. But I'm here if Your Honors have any questions. Otherwise, I'll rest on the briefs. Okay. Thank you. Okay. Thank you. Both a little taller than I. Just to address a couple of issues and correct a couple of points, far be it for me to disagree with my colleague, Mr. DeMaine. Actually, it's 41-year history of public sector agency fee law, not 46 years. I know he wouldn't want to make that mistake again. Dealing with the issue of the GVR in RIFI, I don't believe there is a similar procedure in this court. I beg to differ with you. There's been a number of occasions where we've, our panel in light of a recent Supreme Court decision vacate, the district court's judgment is vacated and remanded for further consideration in light of the new case. And it even happened in Prescott, Judge Pai. It does happen. I understand it does happen. But it's necessary for this court to overrule Mitchell in this case, even if defendant considers it a dead letter. I don't know why. Well, here's why. Why is it necessary for us to do it? Here's why. Mitchell isn't good law now. And it wasn't good law even when it was decided under the principles expressed by the Supreme Court in Harper v. Virginia Board of Taxation. Oh, history now. What about now? Well, history is retroactivity as part of Supreme Court history, Judge Pai. It's only history. It's not good law, and it can't be relied, it would be inappropriate for it to be relied upon as part of the good faith defense. And, Judge Owen, I'm sorry I missed your question. No, I guess the question, though, is that getting back to the now, okay, all the arguments you're making, there might be additional factual arguments you want to make. Why is the district court less equipped to do that than we are? Well, the district court can't overrule Mitchell. Well, certainly it can say that Janus did, just like we can. They have the same ability that we do. Well, I think it's — I think — I mean, if you're saying that district courts cannot say Supreme Court has overruled the Ninth Circuit precedent, that would be a pretty remarkable holding, wouldn't it? Well, I thought it should have in light of Knox, but it didn't. Are you — is it your position that only the Ninth Circuit can say that the Supreme Court has overruled the Ninth Circuit decision and that a district court cannot say that? There are serious impediments that were discussed by the district court in its decision in this case to doing so. But that was all before Janus. And that's correct, Judge Jones. But now that we have Janus, what would prevent the district court from saying, you know what, Ninth Circuit, Mitchell is overruled. I'm reading Janus to overrule it. Is there anything that prevents the district court from saying that? Not necessarily, Your Honor. Well, not necessarily or no? There are, as I said, there are serious impediments. What are those impediments? There are standards that this Court has stated that the district court recognized when it refused to say that Knox overruled. But now — but we're — okay, we're after Janus. The other side has just acknowledged today, and I'm sure you'll bring it to the district court's attention, that Hudson's gone all — they said 46 years. You said 41 years. But I think you both agree it's the sea change. In the interest of judicial economy, Your Honor, and, frankly, due regard for its own decisionmaking, this Court should say that Janus — that Mitchell is no longer good law. It has the opportunity to do so in this case. Sure. I appreciate the advice, but is there anything that prevents the district court from doing the same thing? I suppose not, Your Honor, except the impediments of the decisions that were identified by the district court previously. Why take that risk? That's the purpose of appeals. And unless the Court has further questions, I see my time has expired. I thank the Court for its attention. Thank you very much. Thank you, counsel, for your arguments. We appreciate it. The matter is submitted, and that concludes our session for today.
judges: Gilman, Paez, Owens